IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANCES MACKEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-043-L |
| | § | |
| CHILDREN'S MEDICAL CENTER | § | |
| OF DALLAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: Defendant's Motion for Summary Judgment, filed January 6, 2006;

Defendant's Objections to and Motion to Strike Portions of Plaintiff's Summary Judgment Evidence,

filed February 21, 2006; and Plaintiff's Objection to and Appeal of Magistrate Order Striking Expert

and Supporting Brief, filed April 18, 2006.  After careful consideration of the motions, responses,

replies, evidence, record and applicable law, the court **grants in part** and **denies in part**

Defendant's Motion for Summary Judgment; **denies as moot** Defendant's Objections to and Motion

to Strike Portions of Plaintiff's Summary Judgment Evidence; and **overrules** Plaintiff's Objection

to and Appeal of Magistrate Order Striking Expert.

## I.      Factual and Procedural Background

This case arises out of the employment of Plaintiff Frances Mackey ("Plaintiff" or

"Mackey") by Defendant Children's Medical Center of Dallas ("Children's" or "Defendant").

Plaintiff brought this action in state court on November 12, 2004, alleging violations of the Texas

Commission on Human Rights Act, Tex. Lab. Code Ann. § 21.001 *et seq*. ("TCHRA"); Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*("Title VII"); and the Americans with

**Memorandum Opinion and Order - Page 1**

Disabilities Act, 42 U.S.C. § 12101 *et seq.*("ADA").  Plaintiff, a Caucasian woman, alleges that Children's discriminated against her and subjected her to a hostile work environment based on the race of her husband (African-American) and children (bi-racial) in violation of Title VII and the TCHRA.  She further alleges that Children's discriminated against her based on her disability, namely, job-related stress and depression, in violation of the ADA and TCHRA.  She complains that Children's allegedly unlawful actions resulted in her constructive discharge by forcing her to resign at the direction of her doctor.

From December 18, 2000 to August 2004, Plaintiff worked at Children's as a "patient access representative," which was later known as a "family health unit coordinator" or a "concierge."  Her job duties included, among other things, working with the admissions office to admit patients, inputting data into the computer database related to patient and family information, handling telephone calls and ordering supplies.  Plaintiff was assigned to different intensive care units during

Children's filed an answer, and on January 6, 2005, removed this case to federal court.  On January 6, 2006, Defendant filed a motion for summary judgment, contending that no genuine issues of material fact exist with respect to Plaintiff's Title VII and ADA claims, and it is therefore entitled to judgment as a matter of law on Plaintiff's federal claims.  Defendant also argues that Plaintiff's TCHRA claim should be dismissed for want of jurisdiction, since Plaintiff failed to exhaust her administrative remedies. Finally, Defendant contends that Plaintiff is not entitled to equitable relief since she failed to mitigate her damages by not exercising reasonable diligence in pursuing subsequent employment.  The court now sets forth the facts upon which it relies to resolve the summary judgment motion.  In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

From December 18, 2000 to August 2004, Plaintiff worked at Children's as a "patient access representative," which was later known as a "family health unit coordinator" or a "concierge."  Her job duties included, among other things, working with the admissions office to admit patients, inputting data into the computer database related to patient and family information, handling telephone calls and ordering supplies.  Plaintiff was assigned to different intensive care units during

her employment at Children's, including general pediatrics, cardiac and trauma.  Plaintiff primarily worked the 3:00 p.m. to 11:00 p.m. shift.

During the entirety of Plaintiff's employment at Children's, she was supervised by Jane MacAlla ("MacAlla"), Office Manager for the critical care services team.  Operations Manager Karen Cavazos was MacAlla's supervisor.  MacAlla's annual performance reviews of Plaintiff throughout her employment rated Plaintiff as meeting or exceeding expectations.  In June 2001, after MacAlla told Plaintiff she did not listen well in tense moments, Plaintiff e-mailed MacAlla stating, "[i]t just hurts to do all you can do to do your best and then be made to feel that your boss still finds fault with you."  *See* Plaintiff's Appendix of Summary Judgment Evidence at Tab 1(hereinafter "Pl. Summ. Judg. App.").[1]  In February 2002, Plaintiff sought a transfer to a different unit.  Pursuant to Children's policy, a transfer request form must first be signed by a supervisor and then submitted for approval to the hiring manager.  MacAlla signed Plaintiff's transfer request and also checked the box on the preprinted form indicating that Plaintiff had a prior disciplinary action in the preceding six months.  Ultimately, the hiring manager in charge of allowing transfers denied Plaintiff's transfer request.  In July 2002, Plaintiff submitted another request for transfer.  Plaintiff did not follow through on this transfer request because MacAlla "talked her out of it."

Children's had an employee handbook, "Making Life Better for Children," which required Plaintiff to report directly to Human Resources with a harassment or discrimination complaint.

---

[1]The court notes with disfavor that Plaintiff has failed to number the pages of her appendix, in violation of the court's rules governing summary judgment pleadings.  Moreover, Plaintiff has included three entire deposition transcripts as summary judgment evidence, unduly burdening the court and directly contravening the court's Scheduling Order ¶ 3, which directs the parties to "not submit the entire deposition of a witness[.]" Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malcara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).  Plaintiff's failure to number her appendix and to include only relevant portions of the transcripts has consumed an inordinate amount of the court's time.  Counsel for Plaintiff is admonished to follow the rules in all future filings.

Plaintiff received and read the handbook. Children's also had a compliance hotline, of which Plaintiff was aware. Plaintiff used the hotline to make Corporate Compliance Complaints pertaining to MacAlla's treatment of her on at least one occasion. An e-mail from Kristin Durney ("Durney"), Human Resources Consultant, to Julian DeRosa, Director of Corporate Compliance, stated that Plaintiff's issues had been satisfactorily resolved. The e-mail also noted that MacAlla needed to work on team-building and improvements with communication. In response to later corporate compliance complaints regarding MacAlla's rudeness and hateful behavior, Durney e-mailed Cindy Daigle, Corporate Compliance Administrator, stating that she had addressed the issues raised by the caller with MacAlla, and put MacAlla on a "development plan." The e-mail stated that MacAlla "has made major improvements in her management and communication style." *See* Pl. Summ. Judg. App. at Tab 14.

Sometime prior to June 2003, co-worker, Nicole Paul, called Plaintiff's bi-racial children "oreos" and "half-breeds" and told Plaintiff that she must like "big black d****." *See* Appendix to Defendant Children's Medical Center Motion for Summary Judgment at 34, 99-100, 264 (hereinafter "Def. Summ. Judg. App."). In June 2003, a co-worker cursed when Plaintiff's husband kept calling Children's, and when the co-worker answered, Plaintiff's husband's cell phone would disconnect. The co-worker told Plaintiff that "if that Son of a Bitch husband of yours calls here one more time and hangs up on me[,] I am going to find him and do something to him." *Id.* at 264.

During Plaintiff's employment, MacAlla was overly critical of Plaintiff's performance, was rude to her, called her a liar, asked her to lighten her lipstick and shook her finger in Plaintiff's face. On or about July 2, 2003, Plaintiff sent MacAlla an e-mail complaining of MacAlla's behavior. After receiving the e-mail, MacAlla prepared a written counseling of Plaintiff for insubordination.

In August 2003, MacAlla "chewed [Plaintiff] out" for over-ordering supplies.  Def. Sum. Judg. App. at 38-43, 105.  Plaintiff's doctor thereafter wrote a note, indicating that Plaintiff needed time off work for her "condition," and indicating he had been treating her for this "condition" since 2001.  Thereafter, Children's management recommended Plaintiff be referred to its Employee Assistance Program ("EAP"), after which Plaintiff was permitted a short leave of absence to rest and seek counseling.

In February 2004, Plaintiff was assaulted by a homeless man with a knife while at work.  In a Feedback Form to MacAlla, Plaintiff stated that no one seemed to care about the assault.

Based on notes dated March 11, 2004, MacAlla and others participated in a conference in March 2004, at which Plaintiff was described as "heavily medicated again" and "dragging."  Def. Summ. Judg. App. at 366.[2]  The shorthand notes of the meeting also stated "consider E-2 – slower pace" and appear to indicate that Plaintiff was taking sinus medications, which could be "synergistic" with other medications she was taking.  *Id.*

In or around April 2004, Plaintiff told MacAlla that she had heard from another employee at Children's that supervisor Cindy Boehn had told trainee, Sarah Houston, that Plaintiff was "slow" and a  "MHMR case."  *See* Pl. Summ. Judg. App. at Tab 4; Def. Summ. Judg. App. at 109.  When Plaintiff asked Boehn if she said this, Boehn denied ever saying it.  Def. Summ. Judg. App. at 116.

Thereafter, in or around April 2004, Plaintiff's husband initiated a meeting with MacAlla, Durney and other human resources personnel to discuss his wife's treatment at Children's.  Durney characterized Plaintiff's husband as "accusatory" and "disruptive," and testified that the meeting was

---

[2]Plaintiff contends with no evidence in support that Durney made these notes of a March 2004 meeting with MacAlla.  Defendant has submitted summary judgment evidence that MacAlla's supervisor, Karen Cavazos, and not Durney, made the notes.  *See* Def. App. in Supp. of Mot. to Strike at 29.

**Memorandum Opinion and Order - Page 5**

wholly unproductive and was terminated because of his behavior.  Pl. Summ. Judg. App. at Tab 32 (Durney Depo. at 84-87).  A security officer was called in, and escorted Plaintiff's husband off the premises following the meeting.  *Id.*

On May 17, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination and complaining of workplace harassment and abuse from co-workers and MacAlla, including racial remarks about her husband and children and physical assault by a homeless man on February 12, 2004.  That day, Plaintiff also filed a complaint with the Civil Rights Division of the Texas Workforce Commission ("TWCCRD"), complaining about the February 2004 assault, racial remarks by co-workers in 2003, and remarks that she was "slow" and a "MHMR" case.[3]

On July 4, 2004, co-workers accused Plaintiff of stealing all or part of a pie, which was later found.  After Plaintiff told her husband about the accusations against her involving the pie, her husband ("Phillip"), a cook, came to Children's to explain that Plaintiff did not have a pie in the car and offered to replace the pie.  According to an e-mail written by MacAlla on July 6, 2004, Phillip confronted the accuser in an "aggressive, hostile and threatening manner."  Pl. Summ. Judg. App. at Tab 24.  In an e-mail dated July 8, 2004, MacAlla stated that others present when Plaintiff's husband came to Children's "did not feel he was threatening them."  *Id.*  On July 8, 2004, MacAlla met with others, reviewed the incident, and determined that Plaintiff's husband was no longer welcome on Children's premises.  On July 12, MacAlla and Cavazos met with Plaintiff, and they

---

[3]Although Plaintiff states that she filed a complaint on May 17, 2004 with the Texas Commission on Human Rights ("TCHR"), on March 1, 2004, the functions of the TCHR were transferred to the Civil Rights Division of the Texas Workforce Commission ("TWCCRD").

**Memorandum Opinion and Order - Page 6**

informed her that her husband and children were not welcome on Children's premises.    In a

memorandum written by MacAlla dated July 12, 2004, MacAlla stated the following:

> Karen [Cavazos] and I met with Frances.  I told her that I had
> received her e-mail regarding the incident on July 4th.  And that I
> wanted to be sure she knew that she had several resources available
> to her here at the facility should a problem arise. . . . I then said that
> it was inappropriate for her to bring her husband onto the unit to
> discuss this incident with the staff.  He is not a Children's employee
> and in fact, had been advised by Kristen Durney that he was not
> welcome back on Children's property.  Frances stated she was not
> aware of this. . . . I then told her that in the future, to be reminded that
> her husband was not to be on Children's property and if he did so in
> the future, security would be called and a warrant for trespassing
> issued against him.  She said that her husband brings her to work and
> picks her up and asked if this was OK to which I replied that it was.
> She then asked what if her children had to go to the bathroom.  Karen
> responded that no, he was not welcome to come into the facility. . .
> . [A]fter the fact, Karen stated that she did not hear a reference to
> "her children" and that her response was in regard to her husband
> needing to go to the bathroom.

*Id.* at Tab 25.

Evidence contained in Defendant's summary judgment appendix shows Plaintiff's version

of the conversation with MacAlla on July 12, 2004.  *See* Def. Summ. Judg. App. at 273.  According

to Plaintiff's notes that she submitted to Children's Human Resources, after she disagreed with

MacAlla's statement that Plaintiff's husband had already been told that he was not permitted on

Children's premises, MacAlla stated, "YES HE WAS [TOLD] AND THEY DON'T NEED TO BE

UP   HERE   ANYWAY   BECAUSE   YOUR   INTERRACIAL   MARRIAGE   IS   AN

EMBARR[A]SSMENT TO THIS HOSPITAL!!!!"  *Id.* (capitalization in original). When MacAlla

said this to Plaintiff, she had an "evil look on her face," and "[h]er face turned really red."  *Id.*  On

or about July 18, 2004, Plaintiff provided Human Resources with a lengthy summary of her

mistreatment by MacAlla and others.  *Id.* at 260-74.

On August 12, 2004, Plaintiff's physician wrote a letter stating that he had been treating Plaintiff "for job-related stress and depression caused by abusive treatment by her supervisor at her place of employment[,]" and recommending that Plaintiff terminate her employment at Children's for her health and well-being.  Pl. Summ. Judg. App. at Tab 6.  He wrote another letter and a note to the same effect on August 20, 2004.  *Id.* at Tabs 7-8.[4]

On August 13, 2004, after retaining counsel, Plaintiff filed a Supplemental Charge of Discrimination with the EEOC.  The EEOC issued a right-to-sue letter on August 17, 2004.

On August 20, 2004, upon her doctor's advice that she quit her job at Children's for her health and mental welfare, Plaintiff came to Children's in an attempt to hand-deliver her resignation letter to MacAlla.  As MacAlla was not in the office, Plaintiff was unable to hand-deliver the letter.  The following day, Plaintiff's husband contacted MacAlla regarding his wife's resignation letter, and MacAlla told him to mail Plaintiff's resignation letter to her.  Plaintiff mailed the resignation letter to MacAlla, as MacAlla had requested.  Plaintiff did not report to work after this date.  On August 26, 2004, aware that Plaintiff intended to resign, MacAlla wrote a termination letter to Plaintiff advising her that she had "voluntarily resigned" from Children's under its "no call, no show policy," after Plaintiff failed to report to work on August 24 and August 25, 2004.  Children's received Plaintiff's resignation letter on August 27, 2004.

---

[4]Defendant has objected to the admissibility of the doctor's letter set forth at Tab 6 to Pl. Summ. Judg. App., as well as the subsequent letter and note at Tabs 7 and 8, arguing that these letters are hearsay.  The court overrules this objection.  In this instance, the doctor's letter is not being used for the truth of the matter asserted (namely, that Children's caused Plaintiff's job-related stress and depression), but rather to show what spurred or motivated Plaintiff to resign from her job at Children's in August 2004.  Defendant's alternative argument, that Plaintiff's doctor is not qualified as an expert in the field of psychiatry, is unavailing since Plaintiff is not offering these exhibits for the doctor's expert opinion.

Plaintiff filed this lawsuit on November 12, 2004, 87 days after the right-to-sue letter was issued, and 179 days after she filed her TCHRA complaint.

## II.      Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita,* 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent

summary judgment evidence.  *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994).  Likewise, hearsay evidence, unless it falls within a recognized exception, is not competent summary judgment evidence.  *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir.1995).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas,* 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex,* 477 U.S. at 322-23.

## III.     Analysis

### A.       Exhaustion of Administrative Remedies

Prior to reaching the substantive issues in this case, the court first addresses Defendant's argument that many of the perceived wrongs complained of by Plaintiff are barred as untimely, or for failure to exhaust administrative remedies.  Specifically, Defendant contends that Plaintiff's state law claims under the TCHRA should be dismissed for failure to exhaust administrative remedies.  Defendant also contends that many of Plaintiff's federal claims are based on conduct occurring more than 300 days (July 22, 2003) before her initial EEOC charge was filed, and that complaints based

on this alleged conduct are therefore time-barred.  Finally, Defendant contends that Plaintiff failed

to exhaust her administrative remedies on claims of sex discrimination based on the gender of her

husband (raised for the first time at her deposition) and on claims that Children's terminated her in

retaliation for engaging in protected activity.  The court will address these arguments in turn.

### 1.      Plaintiff's TCHRA Claims

Defendant contends that this court lacks subject matter jurisdiction to entertain Plaintiff's

TCHRA claims, since Plaintiff did not receive a notice of right to file a civil action before filing her

lawsuit and did not wait the statutory period of 180 days to allow the TWCCRD to dismiss or

resolve the complaint before filing suit.  *See* Def. Summ. Judg. Brief at 16-17.  In response, Plaintiff

contends that receipt of a notice of right to file a civil action is not part of the exhaustion

requirement, and that even if the court determines that she failed to exhaust her administrative

remedies under the TCHRA by filing her lawsuit before the 180 days expired, her TCHRA claims

should properly be considered part of her EEOC filing.  *See* Pl. Resp. to Def. Mot. Summ. Judg. ¶¶

29-30 and n.41.

There are several prerequisites to exhausting administrative remedies under the TCHRA.

First, a claimant must (1) file a written complaint with the TWCCRD within 180 days of the alleged

discriminatory act.  *See* Tex. Lab. Code Ann. § 21.202 (Vernon 2006).   Second, a claimant must

file suit no later than two years after filing the administrative complaint.  *Id.* § 21.256.    The

TCHRA also provides, "[i]f the commission dismisses a complaint [filed under the TCHRA] or does

not resolve the complaint before the 181st day after the date the complaint was filed, the commission

shall inform the complainant of the dismissal or failure to resolve the complaint in writing by

certified mail."  *Id.* § 21.208.

**Memorandum Opinion and Order - Page 11**

First, the court rejects Defendant's argument that the TWCCRD's failure to issue a notice of right to file a civil action prevents a complainant from bringing a civil suit.  The TCHRA expressly states that  "[f]ailure to issue the notice of a complainant's right to file a civil action does *not* affect the complainant's right . . . to bring a civil action . . . ." *Id.* § 21.252(d) (emphasis added). *See also Vielma v. Eureka Co.*, 218 F.3d 458, 463 (5th Cir. 2000) (citing § 21.252(d)) (complainant does not have to wait for TCHR's notice of right to file civil action before filing suit); *Acker v. Deboer, Inc.*, 2006 WL 1489265, *3 (N.D. Tex. May 24, 2006) (Buchmeyer, J.) (TCHR's issuance of notice of right to file civil action not required for complainant to exhaust administrative remedies under TCHRA); *City of Houston v. Fletcher*, 63 S.W.3d 920, 924 (Tex. App.– Houston [14 Dist.] 2002, no pet.) (same).[5]

The court now turns to Defendant's contention that this court lacks subject matter jurisdiction to entertain Plaintiff's TCHRA claims since Plaintiff did not wait 180 days to allow the TWCCRD to dismiss or resolve the complaint before filing suit.  The record shows that on May 17, 2004, Plaintiff filed her TCHRA complaint.  Plaintiff filed this lawsuit on November 12, 2004, 179 days after Plaintiff filed her TCHRA complaint.  Plaintiff concedes that she filed her complaint one

---

[5]Defendant relies on *Jones v. Grinnell Corp.*, 235 F.3d 972, 975 (5th Cir. 2001), in support of its argument that issuance of a notice of right to file a civil action is part of the TCHRA's exhaustion requirement.  In *Jones*, an employee had filed a state court action alleging state law violations after receiving a right-to-sue letter from the EEOC. The employee had failed to indicate on his EEOC Charge that he wanted the Charge filed with both the EEOC and the state or local agency.  Under these circumstances, the Fifth Circuit held that the employee had failed to exhaust administrative remedies, rejecting the employee's argument that a right-to-sue letter from the EEOC was interchangeable with a notice of right to file a civil action from the TCHR.  The court notes that state courts considering the issue have limited *Jones* to its facts.  *See, e.g., City of Houston*, 63 S.W.3d at 924 (issuance of notice of right to file civil action by TCHR not part of exhaustion requirements).  The court further notes that  Defendant overstates the court's holding in *Foster v. Tex. Health Sys.*, 2002 WL 1461737 (N.D. Tex. June 30, 2002), to buttress its argument that Plaintiff's TCHRA claim should be dismissed for lack of jurisdiction.  Nothing the court stated in *Foster* is inconsistent with the court's decision in this case.

**Memorandum Opinion and Order - Page 12**

day early.[6]  The issue becomes whether this premature filing deprives a court of subject matter jurisdiction or whether such premature filing is curable.  In answering this question, it is important to note that a federal court has supplemental jurisdiction over the TCHRA claims under the 28 U.S.C. § 1367.

After a careful analysis of Texas cases where employees have prematurely filed suit under statutory exhaustion requirements equally or more stringent that those involved herein, the court rejects Defendant's argument that this court is without subject matter jurisdiction to entertain Plaintiff's TCHRA claims.  In a *per curiam* opinion, the Texas Supreme Court, confronted with a nearly identical situation of premature filing in the face of the arguably more stringent statutory exhaustion requirements of the Texas Whistleblower Act, held that premature filing is not incurable, and jurisdiction vests or attaches once the required time has elapsed.  *See University of Texas Medical Branch at Galveston v. Barrett*, 159 S.W.3d 631, 632 (Tex. 2005) (*per curiam*) (disapproving of cases holding that a trial court lacks jurisdiction of an action filed during the 60-day period provided by section 554.004(d) of the Texas Whistleblower Act, and holding that where public employee prematurely files suit under Texas Whistleblower Act before expiration of 60-day period for public employer to complete its grievance or appeal procedures, the suit should be abated until end of 60-day period rather than dismissed, provided that the procedures have been timely initiated and can continue for the required 60 days or until a final decision is rendered, whichever occurs first).  In so ruling, the Texas Supreme court reaffirmed years of case law under a variety of

---

[6]The court rejects Plaintiff's contention that her TCHRA claims should be considered part of her EEOC filing for purposes of administrative exhaustion.  *See* Pl. Resp. to Def. Mot. Summ. Judg. ¶¶ 29-30.  The worksharing agreement between the TCHR and EEOC "does not extend to the exhaustion of administrative remedies."  *Jones*, 235 F.3d at 975.  *See also Vielma*, 218 F.3d at 464 (Worksharing agreement between TCHR and EEOC does not extend "beyond the receipt and processing of initial complaints.").

statutes allowing after-acquired jurisdiction once the required time has elapsed. *Id.* (and cases cited therein). *See also Texas Employment Comm'n v. Stewart Oil Co.*, 267 S.W.2d 137 (Tex. 1954) (premature filing does not destroy jurisdiction); *Bolduc v. National Union Fire Ins. Co.*, 839 S.W.2d 152 (Tex. App.– Houston [1st Dist.] 1992, no writ) (same); *Cole v. Texas Employment Comm'n*, 563 S.W.2d 363 (Tex. Civ. App.–Fort Worth 1978, writ dism'd) (same); *Crosland v. Texas Employment Comm'n*, 550 S.W.2d 314 (Tex. Civ. App.–Dallas 1977, writ ref'd n.r.e.) (same); *Texas Employment Comm'n v. Hartzheim*, 549 S.W.2d 770 (Tex. Civ. App.–San Antonio 1977, no writ) (same). *Compare with Hines v. Hash*, 843 S.W.2d 464, 468-69 (Tex. 1993) (failure to comply with Texas Deceptive Trade Practices Act's requirement that a consumer shall give written notice to a defendant of his complaint as a prerequisite to filing suit seeking damages results in abatement until condition met, not dismissal).

The court notes that the result would be different if Plaintiff had, for example, failed to file a written complaint with the TWCCRD within 180 days of the alleged discriminatory act. *See* Tex. Lab. Code Ann. § 21.202 (Vernon 2006). This component of the TCHRA is mandatory and jurisdictional. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 486-87 (Tex. 1991). Filing suit prematurely, however, is a horse of a different color. The court can only venture to guess that Defendant mistakenly confused the 180-day filing provision in § 21.202, with the 180-day period in which the TWCCRD has to resolve or dismiss a TCHRA complaint under § 21.208, the former jurisdictional, the latter not.

In short, the court rejects Defendant's arguments that Plaintiff's TCHRA claims should be dismissed for lack of jurisdiction. For the reasons addressed directly above, rather than dismissal of Plaintiff's TCHRA claims, the court determines that the proper course under Texas law is to abate

the civil action until the time requirements have elapsed.  In this civil action, jurisdiction therefore vested with this court on May 18, 2004, one day after Plaintiff filed this action, and 180 days after Plaintiff filed her TCHRA complaint.  Although the court did not formally issue an order of abatement, now that the clock has run there has been an effective abatement.  Moreover, as Defendant did not move to abate, that the court did not issue a formal order is of no moment. Defendant's Motion for Summary Judgment as to Plaintiff's TCHRA claims should be denied.[7]

### 2.       Timeliness of Plaintiff's Title VII and ADEA Claims

Administrative review is normally first required before judicial review of a discrimination complaint.  *See Messer v. Meno*, 130 F.3d 130 (5th Cir. 1997).  A Title VII plaintiff must file a charge of discrimination with the EEOC no more than three hundred days after learning of an adverse employment decision in a referral state, such as Texas.  *Id.* n.2.  Acts occurring more than 300 days prior to filing an EEOC charge are time-barred.

Defendant contends that many of the alleged wrongs cited in Plaintiff's response to its motion for summary judgment are time-barred, since they are based on events which occurred more than 300 days before Plaintiff's EEOC filing.  As Plaintiff filed her EEOC Charge of Discrimination on May 17, 2004, Defendant urges that any claims based on events occurring before July 22, 2003 (more than 300 days before her filing) are time-barred.  *See* Def. Summ. Judg. Brief at 19-21; Def. Reply Brief at 7.

---

[7]The court notes that Defendant's motion asking the court to dismiss Plaintiff's TCHRA claims for want of jurisdiction is properly characterized as a Rule 12(b) motion, and not a Rule 56 motion.  *See* Fed. R. Civ. P. 12, 56.  In addition, as Defendant never moved to dismiss Plaintiff's TCHRA claims on the merits, the court limits its analysis to Defendant's jurisdictional argument.

**Memorandum Opinion and Order - Page 15**

The ultimate goal of the continuing violation theory is to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminatory acts committed as part of this pattern or policy can be considered timely." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001)). Plaintiff at the summary judgment stage "must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Celestine*, 266 F.3d at 352 (quoting *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)). As the Supreme Court has made clear, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). A "discrete act" is one such as a "termination, failure to promote, denial of transfer, or refusal to hire."[8] *Id*. at 114. In *Morgan*, with regard to hostile work environment claims, the Court made clear that acts outside the limitations period are only timely "where at least one act occurred during the limitations period." *Pegram*, 361 F.3d at 280 (citing *Morgan*, *supra*).

In her response, Plaintiff refers to the legal doctrine of continuing violations, but makes no attempt to apply it to the facts of her case. *See* Pl. Summ. Judg. Resp. at ¶ 31. She fails to identify which time-barred acts specifically relate to which claims. The court is left to guess what Plaintiff intends by this citation to the doctrine of continuing violations, untethered to any application to the

---

[8]The court, of course, considers these examples as nonexhaustive. For example, demotions and suspensions, although not listed, clearly constitute discrete acts.

**Memorandum Opinion and Order - Page 16**

facts of this case.  The court, nevertheless, will address whether Plaintiff has met her burden at the summary judgment stage of showing that the time-barred acts of which she complains (namely, those occurring prior to July 22, 2003) can be considered part of any continuing violation of her rights by Defendant.

Viewed in the light most favorable to Plaintiff, wrongs occurring prior to the limitations period even remotely tied to Plaintiff's race discrimination claims include a co-worker some time prior to May 2003 referring to Plaintiff's children as "Oreos" and "half-breeds" and stating that Plaintiff must like "big black d****."  Def. Summ. Judg. App. at 34, 99-100, 264.  Even assuming that statements by a co-worker were part of an "organized scheme" of race discrimination (which Plaintiff has failed to even argue), Plaintiff has failed to connect it with any independent actionable conduct falling within the limitations period.[9]  Accordingly, the court agrees with Defendant that any complaints based on conduct occurring more than 300 days before Plaintiff filed her initial EEOC charge are time-barred.  Thus, in evaluating whether Plaintiff has raised a genuine issue of material fact sufficient to withstand Defendant's summary judgment motion, the court will not consider any alleged wrongs occurring prior to July 22, 2003.  This does not prevent the court, however, from considering this prior alleged conduct in making its determination as to whether Plaintiff has established a claim of race discrimination based on hostile work environment.  *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (allegations of time-barred prior relevant

---

[9]Moreover, these comments were allegedly made by a co-worker with no decision-making authority and not proximate to the time of any adverse employment action.  Thus, even assuming the court were to somehow find these comments sheltered by the continuing violations doctrine, they could not be considered evidence of race discrimination. *See Russell v. Mckinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) (To be evidence of discrimination, remarks, among other criteria, must be made by one "principally responsible" for a plaintiff's termination or be uttered by someone who "had influence or leverage over the official decisionmaker."); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003), *cert. denied*, 540 U.S. 1184 (2004) (same).

conduct should be considered in determining whether hostile work environment claim had merit, as workplace conduct is not measured in isolation).

### 3. Plaintiff's Claims of Sex Discrimination Based on Gender of Husband

At her deposition, Plaintiff for the first time raised a claim of sex discrimination based on her husband's gender. *See* Def. Summ. Judg. App. at 136-37. Defendant has moved for summary judgment, contending that Plaintiff failed to exhaust her administrative remedies with regard to this claim. In her response, Plaintiff does not address this argument. As Plaintiff has not responded, the court determines that she has abandoned it and therefore failed to raise a genuine issue of material fact with regard to any sex discrimination claim based on the gender of her husband. Also, having reviewed Plaintiff's EEOC Charge and Supplemental Charge, the court cannot say that such a claim could reasonably be expected to grow out of the claims presented in her EEOC Charges. *See generally Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466-67 (5th Cir. 1970). Moreover, as this claim was not set forth in Plaintiff's Original Petition (hereinafter "Complaint"), it is not properly before the court. Accordingly, as Plaintiff has failed to raise a genuine issue of material fact as to her sex discrimination claim based on her husband's gender, Defendant is entitled to judgment as a matter of law on this claim.

### 4. Retaliation

Defendant contends it is entitled to summary judgment on Plaintiff's claim that Children's retaliated against her since she failed to exhaust her administrative remedies. *See* Def. Reply at 13. Defendant also notes in its motion for summary judgment that Plaintiff failed to include a claim for retaliation in her Complaint. *See* Def. Summ. Judg. Brief at 6. The court has carefully reviewed Plaintiff's Complaint and determines that Plaintiff does not even marginally allege a claim of

retaliation.  *See generally Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2412-15 (2006) (A plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that the retaliatory actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").  While the court is fully aware of the liberal notice pleading standards under Fed. R. Civ. P. 8(a), even under this liberal standard it cannot be said that Plaintiff's allegations would fairly apprise Defendant that she was bringing a claim for retaliation.  In short, as a claim for retaliation was not set forth in Plaintiff's Complaint, it is not properly before the court. Accordingly, as Plaintiff never brought a retaliation claim, any analysis of Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is pretermitted.

### B.      Title VII Claims

Defendant has moved for summary judgment on Plaintiff's claims that Children's discriminated against her based on her interracial marriage in violation of Title VII.  Prior to considering the grounds for Defendant's motion, the court sets forth the applicable law.

Title VII of the Civil Right Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).   Title VII prohibits discrimination in employment premised on an interracial relationship.  *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir. 1998), *modified en banc on other grounds*, 182 F.3d 333 (5th Cir. 1999).  The Supreme Court has made clear that although Title VII mentions specific employment decisions with immediate consequences, the scope of the prohibition

is not limited to economic or tangible discrimination.  *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (and cases cited therein).  In *Meritor Savings Bank, FSB v. Vinson*, the court held that sexual harassment so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment " violates Title VII.  477 U.S. 57, 64 (1986).  "Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment."  *Morgan*, 536 U.S. at 116 n.10.  Otherwise stated, racial harassment that is so "severe" or "pervasive" as to alter a "term, condition, or privilege of employment," violates Title VII.  *Ramsey*, 286 F.3d at 268.  Thus, Plaintiff may prove her race discrimination claim either by establishing that a tangible employment action was taken against her because of her race (or her interracial marriage) or by establishing that a supervisor with immediate or successively higher authority discriminated against her because of her race (or interracial marriage) and created a hostile or abusive environment.  *See generally Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998); *see also Morgan*, 536 U.S. at 116 n.10.

Neither Plaintiff's Complaint nor her Response to Defendant's Motion for Summary Judgment is a model of pellucid draftsmanship.  As a result, it is difficult for the court to discern the actual basis for Plaintiff's race (and disability) discrimination claims.  Although she states in bold in her Response that "**Plaintiff's Race and Disability Claims Relate to an Abusive, Hostile Work Environment**," (Pl. Summ. Judg. Resp. at 10) (initial emphasis and capitalization), she also includes alleged examples of Children's discriminating against her personally based on her interracial marriage.  To ensure that the court addresses all possible bases regarding her Title VII claims, it will analyze Plaintiff's Title VII claims under both of the above-described methods by which a plaintiff

**Memorandum Opinion and Order - Page 20**

may prove race discrimination in employment.  First, the court will analyze whether Plaintiff has raised a genuine issue of material fact that a tangible employment action was taken against her because of her race (or her interracial marriage).  Second, the court will analyze whether she has raised a genuine issue of material fact that a supervisor with immediate or successively higher authority discriminated against her because of her race (or her interracial marriage) and created a hostile or abusive environment.  *See generally Faragher*, 524 U.S. at 786-87;  *Burlington Indus.*, 524 U.S. at 751.

### 1.     Race Discrimination Based on Tangible Employment Action

A plaintiff can prove a claim of race discrimination by either direct or circumstantial evidence.  *Russell v. Mckinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000).[10]  "Direct evidence" is "evidence which if believed, proves the fact [in question] without inference or presumption."  *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted).  If an inference is required for the evidence to be probative as to an employer's discriminatory animus in terminating the former employee, the evidence is circumstantial, not direct. *Sanstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897-98 (5th Cir. 2002), *cert. denied*, 539 U.S. 926

---

[10]The court will not analyze Plaintiff's claims under the "mixed-motive" test, also called the "modified *McDonnell Douglas*" approach, set forth in *Desert Palace* and subsequent cases.  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02 (2003); *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  Neither party requests the court to apply a mixed-motive analysis, and Plaintiff does not acknowledge that Defendant had a legitimate reason for terminating her.  Accordingly, the court limits its analysis to the *McDonnell Douglas* burden-shifting framework.

(2003).  Because Plaintiff has presented no direct evidence of race discrimination,[11] she must therefore rely on circumstantial evidence.

Discrimination claims based on circumstantial evidence are subject to the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under *McDonnell Douglas*, Plaintiff must first make out a *prima facie* case that she was discriminated against based on her interracial marriage.  *Id.*  To establish her *prima facie* case, Plaintiff must show, or raise a genuine issue of material fact, by a preponderance of the evidence that she: (i) is a member of a protected class; (ii) was qualified for the position; (iii) was subject to an adverse employment action; and (iv) was replaced by someone outside the protected class or treated less favorably than employees outside the protected class.  *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004); *Deffenbaugh-Williams*, 156 F.3d at 589.  In support of its motion for summary judgment, Defendant contends that Plaintiff has failed to make out her *prima facie* case since, among other things, she "has no evidence that employees who did not associate with members of a protected class were treated more favorably under the same circumstances, nor does Plaintiff have any evidence that she was replaced with a person outside the protected class."  Def. Summ. Judg. Brief at 25-26.  Viewing all the evidence in the light most favorable to Plaintiff, the court agrees with Defendant that Plaintiff has not presented any evidence related to the fourth prong of her *prima facie* case.  Moreover, in her Response, Plaintiff fails to make *any* argument or present *any* evidence to rebut Defendant's contention that

---

[11]MacAlla's statement that Plaintiff's "interracial family is an embarrassment to Children's" (*see* Def. Summ. Judg. App. at 273), while clearly discriminatory on its face, is nevertheless not direct evidence of discrimination, as an inference is required to find a relation between the discriminatory animus found in the statement and Plaintiff's termination.  *See Sanstad*, 309 F.3d at 898.  As set forth below, however, it is evidence of a racially hostile work environment.

she failed to make out a *prima facie* case of race discrimination.  Accordingly, there is no genuine issue of material fact regarding her race discrimination claim, and Defendant is entitled to judgment as a matter of law on this claim.[12]

**2.      Race Discrimination Based on Hostile Work Environment**

Defendant has moved for summary judgment on Plaintiff's claims of hostile work environment based on race.  In support, Defendant argues that the conduct of which Plaintiff complains did not affect a term, condition or privilege of her employment and was not severe or pervasive.  Defendant further argues that even if it was, Plaintiff cannot show that Children's failed to take prompt remedial measures.  *See* Def. Summ. Judg. Brief at 29-32.  Prior to addressing Defendant's arguments, a review of the law pertaining to claims of hostile work environment is in order.

**a.      Applicable Legal Standard**

An employer violates Title VII when the employer allows the workplace to be "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris*, 510 U.S. at 21.  The Court in *Harris* further noted that "[t]his standard . . . takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury."  *Id.*

A plaintiff seeking to establish a Title VII violation based on race discrimination creating a hostile work environment must prove that: "(1) she belongs to a protected group; (2) she was

---

[12]As Plaintiff failed to make out her *prima facie* case, the court need not proceed further in the burden-shifting test under *McDonnell Douglas*.

**Memorandum Opinion and Order - Page 23**

subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey*, 286 F.3d at 268.

In *Faragher* and *Ellerth*, *supra*, the Supreme Court modified this test with respect to cases where the alleged harasser is a supervisor with immediate or higher authority over the harassed employee. *See Watts v. Kroger*, 170 F.3d 505, 509 (5th Cir. 1999). In such cases, the employee need only meet the first four elements of the test. *Id.* Once the plaintiff makes this showing, the employer is vicariously liable for the supervisor's actions. When the harassment has not culminated in a tangible employment action taken against the complaining employee, the employer may avail itself of an affirmative defense, which is comprised of two elements: (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities. *Watts*, 170 F.3d at 509-10.

In this case, Plaintiff is complaining that the alleged harassment was due to her husband's race (African-American) and her children's race (bi-racial), not her own race. *See generally Deffenbaugh-Williams*, 156 F.3d at 589. "For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (internal citations and quotations omitted). A "term, condition, or privilege" of employment is affected when the harassing conduct is severe or pervasive enough to create an objectively hostile or abusive

working environment.  *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir.

1999).  Courts determine whether an environment is sufficiently abusive to be actionable under Title

VII by reviewing all of the relevant circumstances, including the frequency of the conduct, its

severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and

whether it unreasonably interferes with the employee's work performance. *Butler v. Ysleta Indep.*

*Sch. Dist.*, 161 F.3d 263, 268-69 (5th Cir. 1998) (citing *Faragher*, 524 U.S. at 787-88).  Incidental

or occasional comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are

not discriminatory changes in the terms and conditions of a worker's employment.  *Id.*

Central to the court's inquiry into a hostile environment claim is whether the alleged

harasser's actions have undermined the victim's workplace competence, discouraged her from

remaining on the job, or kept her from advancing in her career.  *Harris*, 510 U.S. at 22; *Shepherd*,

168 F.3d at 874.  Title VII is intended only to prohibit and prevent conduct "that is so severe [or]

pervasive that it destroys a protected class member's opportunity to succeed in the workplace."

*Shepherd*, 168 F.3d at 874.  Title VII's overall goal of equality is not served if a claim can be

maintained solely based on conduct that wounds or offends, but does not hinder an employee's

performance.  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).

Workplace conduct is not to be viewed in isolation, but the court must consider all the

circumstances, even those alleged wrongs that are time-barred.  *See Ramsey*, 286 F.3d at 268.   As

the Supreme Court recently stated in a hostile work environment case involving same-sex

harassment:

> the objective severity of harassment should be judged from the
> perspective of a reasonable person in the plaintiff's position,
> considering "all the circumstances[.]" . . . The real social impact of
> workplace behavior often depends on a constellation of surrounding

> circumstances, expectations, and relationships which are not fully
> captured by a simple recitation of the words used or the physical acts
> performed.  Common sense, and an appropriate sensitivity to the
> social context, will enable courts and juries to distinguish between
> simple teasing . . . and conduct which a reasonable person in the
> plaintiff's position would find severely hostile or abusive.

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81-82 (1998) (citations omitted).

### b.      The Summary Judgment Record

The facts viewed in the light most favorable to Plaintiff show that MacAlla was overly critical of Plaintiff's performance, was rude to her, called her a liar, asked her to lighten her lipstick and shook her finger in Plaintiff's face.  Sometime prior to June 2003, co-worker, Nicole Paul, called Plaintiff's bi-racial children "oreos" and "half -breeds" and told Plaintiff that she must like "big black d****."  Def. Summ. Judg. App. at 34, 99-100, 264.  In June 2003, a co-worker cursed when Plaintiff's husband kept calling Children's, and when the co-worker answered, Plaintiff's husband's cell phone would disconnect.  The co-worker told Plaintiff that "if that Son of a Bitch husband of yours calls here one more time and hangs up on me I am going to find him and do something to him."  *Id.* at 264.     In August 2003, MacAlla "chewed [Plaintiff] out" for over-ordering supplies.  Def. Sum. Judg. App. at 38-43, 105.  Plaintiff's doctor thereafter wrote a note, indicating that Plaintiff needed time off work for her "condition," and indicating he had been treating her for this "condition" since 2001.  Thereafter, Children's management recommended Plaintiff be referred to its Employee Assistance Program, after which Plaintiff was permitted a short leave of absence to rest and seek counseling.

In or around April 2004, Plaintiff's husband initiated a meeting with MacAlla, Durney and other human resources personnel to discuss his wife's treatment at Children's.    Durney characterized Plaintiff's husband as "accusatory" and "disruptive," and testified that the meeting was

wholly unproductive and was terminated because of his behavior.  Pl. Summ. Judg. App. at Tab 32

(Durney Depo. at 84-87).   Rather than allow Plaintiff's husband to leave voluntarily, a security

officer was called in to escort Plaintiff's husband off the premises following the meeting.  *Id.*

Thereafter, on July 4, 2004, co-workers accused Plaintiff of stealing all or part of a pie.   After

Plaintiff told her husband about the accusations against her involving the pie, her husband, a cook,

came to Children's to explain that Plaintiff did not have a pie in the car and offered to replace the

pie.  MacAlla provides contradictory testimony regarding Plaintiff's husband's behavior that day.

According to an e-mail written by MacAlla on July 6, 2004, Phillip confronted the accuser in an

"aggressive, hostile and threatening manner." *Id.* at Tab 24.   In an e-mail dated July 8, 2004,

however, MacAlla acknowledged that those present when Plaintiff's husband came to Children's

"did not feel he was threatening them."  *Id.*  On July 8, 2004, MacAlla met with others, reviewed

the incident, and determined that Plaintiff's husband was no longer welcome on Children's premises.

On July 12, MacAlla and Cavazos met with Plaintiff, and they informed her that her husband and

children were not welcome on Children's premises.   After Plaintiff disagreed with MacAlla's

statement that Plaintiff's husband had already been told that he was not permitted on Children's

premises, MacAlla stated, "YES HE WAS [TOLD] AND THEY DON'T NEED TO BE UP HERE

ANYWAY BECAUSE YOUR INTERRACIAL MARRIAGE IS AN EMBARR[A]SSMENT TO

THIS HOSPITAL!!!!"  Def. Summ. Judg. App. at 273 (capitalization in original). When MacAlla

said this to Plaintiff, she had an "evil look on her face," and "[h]er face turned really red."  *Id.*

### c.    Defendant's Arguments

Defendant contends that it is entitled to summary judgment on Plaintiff's hostile work

environment claims based on race since: (i) MacAlla's statement is merely a stray remark; (2) the

alleged harassment did not have the effect of altering the terms and conditions of her employment, and was not sufficiently severe or pervasive; and (3) Children's took prompt remedial action which brought an end to any harassment, and Plaintiff failed to take advantage of its preventive measures with respect to the harassment of which she complains.

Defendant contends that MacAlla's statement that Plaintiff's marriage was an embarrassment to Children's is a mere "stray remark" which Plaintiff "speculated was a racial reference." *See* Def. Summ. Judg. Brief at 11.  Defendant also contends that this comment was not "clear and unambiguous."  *Id.* at 23.  Children's, however, in its legal briefing, only tells half the story, recounting that MacAlla told Plaintiff that her family was "an embarrassment" to Children's.  *Id.* at 11, 23.  Nowhere in its briefing does Defendant include the entirety of the alleged statement by MacAlla, namely, that Plaintiff's "interracial marriage is an embarr[a]ssment to this hospital" and that her family has no reason to be at Children's.  The court frowns on Defendant playing a game of "hide-the-ball" with the court.  Plaintiff does not fare any better, as she fails to even mention this statement in her briefing.  Instead, the court located the statement during its review of the entire record.  When the entire statement is presented, Defendant's argument that MacAlla's comments are merely stray remarks becomes untenable.

A reasonable jury could find that comments like those made in this case by MacAlla carry a clear message that for MacAlla, Plaintiff's marriage to an African-American man was a source of shame and humiliation to Children's.   The evidence regarding MacAlla's racially charged statement, along with evidence that she was angry and had a red face when she made the comment, show disdain and contempt toward Plaintiff because of her relationship with an African-

**Memorandum Opinion and Order - Page 28**

American man.[13]  Moreover, such a powerful racial statement by Mackey's supervisor is a direct attack on the most intimate matters of her life.  A person in Mackey's situation cannot help but feel humiliated and inferior by such statements.  To make matters worse, Mackey had to work in an environment knowing that her superior had such strong negative feelings about her merely because she was, as a white woman, married to an African-American man and had children by him.  As the court stated in a previous opinion involving racially charged statements in the work environment, "[o]nly those persons who are racists, incurable optimists, or lack any appreciation of the meaning of the statements made, and the context in which they were made, would fail to comprehend the magnitude and gravity of such statements."  *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 542 (N.D. Tex. 2005).  The court finds this language equally applicable to Mackey's case.  Moreover, in light of MacAlla's demonstrated animus toward Plaintiff's interracial marriage, a reasonable jury could conclude from the facts that Plaintiff's husband was escorted from Children's by security because of racist attitudes toward interracial marriage at Children's, and not because Philip posed a sufficient level of threat to require such action.

---

[13]With regard to evidence that MacAlla was angry and her face turned red when she made the statement,  the case of *Ash v. Tyson Food, Inc.*, 126 S.Ct. 1195, 1197 (2006), is illustrative.  In that case alleging race discrimination, there was evidence that Tyson's plant manager, who made the disputed hiring decisions, had referred on some occasions to each of the African-American petitioners as "boy." Petitioners argued this was evidence of discriminatory animus. The Court of Appeals disagreed, holding that "[w]hile the use of 'boy' when modified by a racial classification like 'black' or 'white' is evidence of discriminatory intent, the use of 'boy' alone is not evidence of discrimination." 129 Fed.Appx. 529, 533 (11th Cir. 2005) *(per curiam)*. Finding the appellate court's decision clearly erroneous, the Supreme Court held that "[a]lthough it is true the disputed word will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign. The speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." In this case, Plaintiff testified that MacAlla was angry and had a red face when she made the racially-charged comment. From the use of all capital letters in the summary judgment evidence (*see* Def. Summ. Judg. App. at 273), it is also possible that MacAlla raised her voice. While the meaning of MacAlla's statement is clear on its face, the *Ash* factors are instructive here as well.  Moreover, regarding the history of such viewpoints, laws banning miscegenation played a role in the history of racism in this country, and MacAlla's statement is reminiscent of the environment when these laws were in effect. *See generally Loving v. Virginia*, 388 U.S. 1, 11 (1967) (striking down state bans on interracial marriages as violating the United States Constitution, since "[t]here is patently no legitimate overriding purpose independent of invidious racial discrimination which justifies this classification.").

The court, in considering the totality of the circumstances at the workplace, also considers the time-barred racist remarks of coworkers.  *See Ramsey*, 286 F.3d at 268 (allegations of time-barred prior relevant conduct should be considered in determining whether hostile work environment claim had merit, as workplace conduct is not measured in isolation).  Sometime prior to June 2003, co-worker, Nicole Paul, called Plaintiff's bi-racial children "oreos" and "half-breeds" and told Plaintiff that she must like "big black d****."  Def. Summ. Judg. App. at 34, 99-100, 264.  In June 2003, a co-worker cursed when Plaintiff's husband kept calling Children's, and when the co-worker answered, Plaintiff's husband's cell phone would disconnect.  The co-worker told Plaintiff that "if that Son of a Bitch husband of yours calls here one more time and hangs up on me I am going to find him and do something to him."  *Id.* at 264.[14]

In light of this evidence, the court rejects Defendant's argument that Plaintiff has failed to show that the alleged harassment had the effect of altering the terms and conditions of her employment, and was not sufficiently severe or pervasive.  Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged her from remaining on the job, or kept her from advancing in her career.  *Harris*, 510 U.S. at 22; *Shepherd*, 168 F.3d at 874.  Plaintiff has presented evidence that approximately one month after MacAlla's statement, she was so discouraged from remaining at her job that she submitted her resignation upon her doctor's recommendation that Plaintiff terminate her employment at Children's for her mental health and welfare because of  job-related stress and

---

[14]Ordinarily, this comment standing alone would not be probative of whether a racially hostile work environment existed; however, given the totality of the circumstances described above, it could be considered as evidence that Plaintiff's husband was treated differently, and a reasonable jury could find this probative as to the merits of Plaintiff's hostile work environment claim.

depression caused by abusive treatment by her supervisor at her place of employment.   *See* Pl. Summ. Judg. App. at Tab 6.  Moreover, during her employment, Mackey took leave for her mental health.  Given the feelings harbored by Plaintiff's supervisor regarding her interracial marriage, a reasonable person could conclude that there was no meaningful chance of Mackey advancing or moving ahead in such an environment.  Finally, given MacAlla's unambiguous statement that Plaintiff's interracial marriage was an embarrassment to Children's and that her family did not need to be there, a reasonable jury could conclude that Plaintiff could not get ahead at Children's with MacAlla as her direct supervisor.

Having reviewed all of the relevant circumstances, including the frequency of the conduct, its severity, whether the conduct was physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance (*see Butler*, 161 F.3d at 269) (citing *Faragher*, 524 U.S. at 787-88), based on the record, the court determines that under applicable law, Plaintiff has raised a genuine issue of material fact that the racial  harassment of which she complains was "sufficiently severe or pervasive to alter the conditions of the [her] employment and create an abusive working environment[.]*" See Harris,* 510 U.S. at 21 (internal quotations and citations omitted).  Otherwise stated, given the evidence, a reasonable jury could conclude that the conduct of which Plaintiff complains was severe or pervasive enough to create an objectively hostile or abusive working environment. *See Shepherd*, 168 F.3d at 874.  Because a reasonable jury could conclude that Plaintiff was subject to a hostile work environment based on race, summary judgment on Plaintiff's hostile work environment claim based on race is not appropriate.

Finally, Defendant has asserted an affirmative defense under *Ellerth/Faragher*, *supra*, arguing that it took prompt remedial action which brought an end to any harassment, and that Plaintiff failed to take advantage of its preventive measures with respect to the harassment of which she complains. First, there is no evidence that Children's took prompt remedial action after Plaintiff complained of MacAlla's July 12, 2004 comments. While there is evidence that Defendant investigated Nicole Paul's comments and told her they were unacceptable in the workplace, a jury could conclude, as Plaintiff has argued, that Children's should have done more. As to the co-worker who said "if that Son of a Bitch husband of yours calls here one more time and hangs up on me I am going to find him and do something to him," Def. Summ. Judg. App. at 264, there is insufficient evidence that Defendant took prompt remedial measures. Accordingly, Defendant's motion for summary judgment on its affirmative defense should be denied.

## C.      Plaintiff's Disability Claims

Defendant has moved for summary judgment on Plaintiff's claims that Defendant discriminated against her based on her disability, namely, depression and job-related stress, in violation of the ADA. Once again, because of Plaintiff's briefing and pleadings, it is difficult for the court to discern the actual basis for Plaintiff's disability discrimination claims. Although she states in bold in her Response that "**Plaintiff's Race and Disability Claims Relate to an Abusive, Hostile Work Environment**," (Pl. Summ. Judg. Resp. at 10) (original emphasis and capitalization), she also includes examples of what appear to be Children's discriminating against her personally based on her alleged disability. To ensure that the court addresses all possible bases regarding her disability claims, the court will analyze Plaintiff's disability claims as both complaining that she was

discriminated against based on an alleged disability and that Defendant subjected to her a hostile

work environment based on her alleged disability.

### 1.      Discrimination Under the ADA

The ADA is an antidiscrimination statute designed to remove barriers which prevent

qualified individuals with disabilities from enjoying employment opportunities available to persons

without disabilities. *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir.), *cert.*

*denied*, 519 U.S. 1029 (1996). The ADA prohibits discrimination against a qualified individual

because of a disability "in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation job training; and other terms, conditions, and

privileges of employment." 42 U.S.C. § 12112(a).

A person "may establish a claim of discrimination under the ADA either by presenting direct

evidence or by using the indirect method of proof set forth" in *McDonnell Douglas*, 411 U.S. at 802-

04. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).[15] Plaintiff has presented no direct

evidence of disability discrimination; nor does she claim to have any direct evidence. The court

therefore analyzes Plaintiff's claim under the *McDonnell Douglas* burden-shifting approach. To

establish a *prima facie* case of intentional discrimination under *McDonnell Douglas*, a plaintiff must

show that she "(1) suffers from a disability; (2) was qualified for the job; and (3) was subject to an

adverse employment action because of her disability. *See Talk v. Delta Airlines, Inc.*, 165 F.3d

1021, 1024 (5th Cir. 1999) The employer then "must show a legitimate, nondiscriminatory reason

---

[15]Once again, the court will not analyze Plaintiff's claims under the "mixed-motive" test, also called the
"modified *McDonnell Douglas*" approach, set forth in *Desert Palace* and subsequent cases. *See Desert Palace*, 539 U.S.
at 101-02; *Rachid*, 376 F.3d at 312. Neither party requests the court to apply a mixed-motive analysis, and Plaintiff does
not acknowledge that Defendant had a legitimate reason for terminating her. Accordingly, the court limits its analysis
to the *McDonnell Douglas* burden-shifting framework.

for its action." *Seaman*, 179 F.3d at 300.  "The employee ultimately bears the burden of showing that the employer's actions were motivated by considerations prohibited by the statute." *Id*.

A person is disabled under the ADA if she (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2); *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).   Major life activities can include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(i).  "Substantially limits" means that a person is:

> (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity, as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R.§ 1630.2(j)(1); *Taylor*, 93 F.3d at 164 n.5.  Though not entirely clear given the sparseness of Plaintiff's briefing, it appears that Plaintiff is contending that she was disabled under the first and third prongs, that is, that she has a "physical or mental impairment that substantially limits one or more major life activities" and that she was "regarded as" having such an impairment by her employer.

Defendant contends that Plaintiff has failed to make out a *prima facie* case of disability discrimination because she has not shown by a preponderance of the evidence that: (1) her alleged disability (job-related stress and depression) affected her ability to perform her job, and she cannot point to any major life activity that was substantially limited because of her alleged disability; (2) Defendant "regarded" her as disabled; or (3) any adverse employment action was taken against her

because of her alleged disability or perception of disability.  *See* Def. Summ. Judg. Brief at 26-27.
The court agrees.

Because Defendant does not have the burden at trial of proving that Plaintiff is disabled, it
can meet its summary judgment obligation by pointing the court to the absence of evidence to
support her claims that she is disabled. *See Celotex,* 477 U.S. at 325.  If Defendant does so, then
Plaintiff must go beyond her pleadings and designate specific facts showing that there is a genuine
issue for trial. *See id.; Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (per curiam).
Summary judgment is mandatory where the nonmoving party fails to meet this burden. *See Little*,
37 F.3d at 1076.  Plaintiff must adduce evidence that would permit a reasonable jury to find that she
had an impairment that substantially limited one or more of the major life activities. The only
evidence before the court of any major life activity that Plaintiff's condition could have substantially
impaired is that of working.  In order to establish a substantial limitation on the major life activity
of working, Plaintiff must demonstrate a significant restriction in the ability to perform either a class
of jobs or a broad range of jobs in various classes.  *See Sherrod v. American Airlines, Inc.,* 132 F.3d
1112, 1120 (5th Cir. 1998).

Plaintiff has not adduced evidence that would permit a reasonable jury to find that her "job-
related stress and depression" substantially limited the major life activity of working.  As Defendant
correctly points out, Plaintiff testified in her deposition that she was not limited in her ability to do
her job; that she loved her job; that it did not stress her out and it took her mind off her depression.
*See* Def. Summ. Judg. App. at 97, 119-20, 148, 179, 263.  There is also insufficient evidence to raise
a fact question that her alleged "disability" posed a significant restriction in the ability to perform

either "a class of jobs or a broad range of jobs in various classes." *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir, 1996), *cert. denied*, 519 U.S. 1093 (1997).

In addition, she has failed to offer sufficient summary judgment evidence from which a reasonable jury could find that Children's regarded her as being substantially impaired in one of more "major life activities" and thus unable to perform a "class of jobs or a broad range of jobs" at Children's. Accordingly, because Plaintiff has failed to raise a genuine issue of material fact that she qualified as "disabled" under the ADA, Defendant is entitled to judgment as a matter of law on her claim of disability discrimination.

**2.      Hostile Work Environment Based on Disability**

In *Flowers v. Southern Reg'l Physician Servs., Inc.,* 247 F.3d 229 (5th Cir. 2001), the Fifth Circuit recognized a right to a disabilities based hostile work environment claim under the ADA. The court stated the requirements for a hostile work environment claim under the ADA:

> [T]o succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Id.* at 235.

Plaintiff complains of instances where she felt harassed by statements that she was "slow" or a "MHMR" case. Plaintiff has submitted evidence that she told MacAlla that she had heard from another employee at Children's that supervisor Cindy Boehn had told trainee, Sarah Houston, that Plaintiff was "slow" and a  "MHMR case." Pl. Summ. Judg. App. at Tab 4; Def. Summ. Judg. App. at 109.  When Plaintiff asked Boehn if she said this, Boehn denied ever saying it.  Def. MSJ App.

**Memorandum Opinion and Order - Page 36**

at 116.  Based on notes dated March 11, 2004, MacAlla and others participated in a conference in

March 2004, at which Plaintiff was described as "heavily medicated again" and "dragging." *Id.* at

366.  The shorthand notes of the meeting also stated "consider E-2 – slower pace" and appear to

indicate that Plaintiff was taking sinus medications, which could be "synergistic" with other

medications she was taking. *Id.* Children's management at some point recommended Plaintiff be

referred to its Employee Assistance Program, after which Plaintiff was permitted a short leave of

absence to rest and seek counseling.

Having reviewed all of the relevant circumstances, including the frequency of the conduct,

its severity, whether the conduct was physically threatening or humiliating, or a mere offensive

utterance, and whether the conduct unreasonably interfered with the employee's work performance,

the court determines that Plaintiff has failed to raise a genuine issue of material fact that the acts and

comments complained of were sufficiently pervasive or severe to constitute a hostile work

environment based on disability.  *See generally Flowers*, 247 F.3d at 236 (quoting *McConathy v.*

*Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)) ("[T]he disability-based harassment

must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive

working environment.'"). These are insufficient facts from which a reasonably jury could find that

the comments were sufficiently pervasive or severe.  *See, e.g., McConathy*, 131 F.3d at 563-64

(employee's supervisor's tasteless comments toward the employee regarding the "slow pace" of the

employee's recovery from her temporomandibular joint disease, the supervisor's reassignment of

work away from her, and the supervisor's insensitivity toward her need for surgery and time to

recuperate held not to constitute disability-based harassment sufficiently pervasive enough to state

a claim for disability harassment).  As the court stated in *McConathy,* some workers will not get

along well with each other in the workplace, and courts should not elevate a few harsh words or "cold shouldering" to the level of an actionable offense. *See id.* at 564. Accordingly, as Plaintiff has failed to raise a genuine issue of material fact that the harassing conduct of which she complains was severe or pervasive, Defendant is entitled to judgment as a matter of law on this claim.[16]

### D.     Failure to Mitigate

Defendant contends that Plaintiff failed to mitigate her damages by not exercising reasonable diligence in pursuing subsequent employment. *See* Def. Summ. Judg. Brief at 33-34. Mitigation is a defensive issue on which the employer bears the burden of proof. *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir.), *cert. denied*, 498 U.S. 987 (1990). Since Children's is moving for summary judgement on this affirmative defense, it bears the burden of proving to the court "beyond peradventure" that Plaintiff failed to mitigate her damages. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

To meet its summary judgment burden on its affirmative defense of failure to mitigate, an employer must establish to the court beyond peradventure that "substantially equivalent work was available and . . . the . . . claimant did not exercise reasonable diligence to obtain it." *Sellers*, 902 F.2d at 1193 (citation omitted). Where an employer proves "that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Id.* Here, Children's seeks to show that Plaintiff did not exercise reasonable diligence in pursuing other employment. After having reviewed the evidence

---

[16]Even assuming, *arguendo*, that Plaintiff had raised a fact issue that the alleged wrongful conduct was severe or pervasive, she has failed to adduce evidence that the disability harassment of which she complains affected a "term, condition or privilege" of her employment, rendering summary judgment in favor of Defendant appropriate on this ground as well. *See generally Flowers,* 247 F.3d at 325.

in the light most favorable to Plaintiff, the court determines that Plaintiff has raised a fact issue as to whether she used reasonable diligence to obtain substantially equivalent employment after being released to do so by her doctor. Because there is a fact question on which the jury could decide in Plaintiff's favor, Children's has not met its burden of establishing that Plaintiff failed to satisfy her duty to mitigate. Accordingly, Children's motion for summary judgment on Plaintiff's failure to mitigate should be denied.

## IV. Defendant's Objections to and Motion to Strike Portions of Plaintiff's Summary Judgment Evidence

Defendant has filed various objections to Plaintiff's summary judgment evidence and moved to strike certain portions. The court previously set forth the evidentiary standard upon which it relied in determining Defendant's Motion for Summary Judgment. The court did not consider any evidence that did not meet this standard. In other words, evidence that did not fall within this standard was not considered and played no role in this decision. Moreover, the same decision would have been reached even if the court had considered the evidence. Accordingly, other than noted at footnote 4, *supra*, the court **overrules** Defendant's evidentiary objections as moot and **denies as moot** Motion to Strike Portions of Plaintiff's Summary Judgment Evidence.

## V. Plaintiff's Objection to and Appeal of Magistrate Order Striking Expert

On April 18, 2006, Plaintiff filed her Objection to and Appeal of Magistrate Order Striking Expert, appealing the magistrate judge's order striking Plaintiff's designated expert, Dr. William Coleman. Plaintiff seeks to offer Dr. Coleman's "expert" opinion on the diagnosis, treatment and cause of Plaintiff's alleged depression and diagnosed post-traumatic stress disorder. Dr. Coleman proffered the opinion that Plaintiff's depression and post-traumatic stress were caused by her employment at Children's. The magistrate judge concluded that Dr. Coleman's opinion did not meet

the prescribed criteria to admit an expert opinion as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), and its progeny.  *See* Order at 3-4 (and cases cited therein).  As part of the magistrate judge's analysis, he found that Dr. Coleman was not in the field of psychiatry and there was no evidence that he had training or practice in the field of psychiatry.  In addition, Dr. Coleman relied on the DMS-III in making his diagnosis, while the text has been twice superseded.  The magistrate judge also found a marked absence of any records showing medical testing for the presence and severity of Plaintiff's reported depression, or any record that she was referred to a physician specializing in psychiatry to request such tests.  Having considered the magistrate judge's able order, as well as Plaintiff's objections, the court determines that Plaintiff has not met its burden of showing that the magistrate judge committed any error of law or was clearly erroneous in finding that Dr. Coleman's opinions were unreliable and inadmissible.  *See generally* Fed. R. Civ. P. 72(a).  Accordingly, the court **overrules** Plaintiff's Objection to and Appeal of Magistrate Order Striking Expert.

## VI.    Conclusion

For the reasons stated herein, the court **denies in part and grants in part** Defendant's Motion for Summary Judgment.  Plaintiff has raised a genuine issue of material fact with respect to her Title VII and TCHRA claims of hostile work environment based on her interracial marriage.  The court therefore **denies** Defendant's Motion for Summary Judgment as to these claims.  Plaintiff has failed to raise a genuine issue of material fact with respect to her remaining Title VII claims and her ADA claims.  Defendant is therefore entitled to judgment as a matter of law on all remaining federal claims, and they are **dismissed with prejudice**.  At this juncture, Plaintiff's Title VII and

TCHRA claims of hostile work environment based on race remain for trial. Also remaining for trial are Plaintiff's remaining TCHRA claims for race discrimination and disability discrimination.

The court is confronted with the anomalous situation where it has granted Defendant's Motion for Summary Judgment on Plaintiff's remaining federal claims (that is, all her federal claims except her racially hostile work environment claim), yet Plaintiff's parallel TCHRA race and disability discrimination claims remain for trial. This situation was created by Defendant's failure to move for summary judgment on the TCHRA claims. Instead, Defendant relied solely on the argument that Plaintiff's TCHRA claims should be dismissed for failure to exhaust administrative remedies (which the court rejected).

The TCHRA "is modeled after federal civil rights law." *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). An express purpose of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id.* (quoting Tex. Lab. Code § 21.001(1)). The TCHRA "purports to correlate 'state law with federal law in the area of discrimination in employment.'" *Id.* (quoting *Schroeder*, 813 S.W.2d at 485). *See also Vielma*, 218 F.3d at 462 ("One of the primary goals of the [TCHRA] is to coordinate state and federal law in the area of employment discrimination."). In light of the Legislature's express purpose, Texas courts "look to analogous federal precedent for guidance when interpreting the [TCHRA]." *Rodriguez v. Conagra Grocery Prods. Co.*, 436 F.3d 468, 473 (5th Cir. 2006) (quoting *NME Hosps.*, 994 S.W.2d at 144) (TCHRA, like ADA, prohibits employment-based discrimination grounded in an individual's disability). This court therefore is required to apply the same analysis on the TCHRA race and disability claims as it did on the Title VII and ADA claims.

**Memorandum Opinion and Order - Page 41**

In light of Defendant's failure to move on Plaintiff's TCHRA claims, and the use of federal precedent in resolving these state claims, the court believes that judicial economy warrants it to *sua sponte* raise the issue of summary judgment with respect to Plaintiff's TCHRA race discrimination claim (excepting her racially hostile work environment claim, which remains for trial) and TCHRA disability discrimination claim.  Accordingly, Plaintiff is hereby directed to respond in writing no later than **Friday, October 13, 2006**, and inform the court why summary judgment should not be granted on these TCHRA claims, using the same analysis the court used in analyzing Plaintiff's federal claims in this decision.  Defendant shall not file a reply unless directed by the court to do so.

**It is so ordered** this 22nd day of September, 2006.

Sam A. Lindsay
United States District Judge